IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIA E. UNTALAN, #02702-093, <br><br> Petitioner, <br><br> v. <br><br> WARDEN ESTELA DERR, <br><br> Respondent. | CIVIL NO. 23-00091 JMS-RT <br><br> **ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241, ECF NO. 1** |

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241, ECF NO. 1**

Before the court is pro se Petitioner Maria E. Untalan's ("Untalan") "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241, Seeking An Order Directing the Bureau of Prisons ('BOP') to Apply First Step Act ('FSA') Earned Time Credits & 1/3 Elderly Credits" ("Petition"). ECF No. 1. The court has reviewed the Petition pursuant to Habeas Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"). Because Untalan admits that she failed to exhaust administrative remedies, and the court concludes that waiving the exhaustion requirement is not appropriate here, the Petition is DISMISSED without prejudice, but without leave to amend.

## I. BACKGROUND

On June 25, 2019, Untalan pleaded guilty to conspiracy to distribute methamphetamine hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii).  *See* Criminal Minutes, *United States v. Untalan*, Cr. No. 19-00023 (D. Guam June 25, 2019), ECF No. 13.  On August 24, 2022, the court sentenced Untalan to 65 months' imprisonment and three years' supervised release.  *See* Judgment in a Criminal Case, *Untalan*, Cr. No. 19-00023 (D. Guam Aug. 31, 2022), ECF No. 200.[1]

Untalan is now incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu").  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "02702-093"; and select "Search") (last visited Apr. 10, 2023).  The Federal Bureau of Prisons' ("BOP") inmate locator currently states that Untalan's projected release date is February 17, 2026.  *Id.*

On February 15, 2023, the court received the Petition.  ECF No. 1.  In the Petition, Untalan seeks an order "directing the BOP to apply [her] FSA Earned Time Credits and 1/3 Elderly Credits."[2]  *Id.* at PageID.1.  If these credits were

---

[1] Unless otherwise specified, all other references to filings in this Order are to the docket in Civ. No. 23-00091 JMS-RT.

[2] Under 18 U.S.C. § 3632(d)(4)(A), eligible federal inmates who successfully complete evidence-based recidivism reduction programming or productive activities may earn time credits

(continued . . .)

properly applied, Untalan contends, she should have been released on February 12, 2023.  *Id.*  In the Petition, however, Untalan "admit[s] that [she] did not exhaust [her] administrative remedies before seeking relief under 28 U.S.C. Section 2241."  *Id.*

On March 14, 2023, the court received Untalan's Supplement to the Petition.  ECF No. 5.  In the Supplement, Untalan asserts that she actually should have been released on February 15, 2023—not February 12, 2023—after subtracting from her February 15, 2025 "Elderly Offender Two Thirds Date" both twelve months pursuant to the First Step Act and twelve months pursuant to the Second Chance Act.  *Id.* at PageID.14.

The court issued an Order to Show Cause Why the Petition, ECF No. 1, Should Not Be Dismissed.  ECF No. 4.  The court ordered Untalan to show cause in writing why the Petition should not be dismissed without prejudice for failure to exhaust administrative remedies.  *Id.* at PageID.7.  The court received Untalan's Response on March 16, 2023, ECF No. 6, and Respondent's Optional Response on April 6, 2023, ECF No. 7.  Pursuant to Local Rule 7.1(c), the court elects to decide the Petition without a hearing.

---

that are applied toward time in prerelease custody or supervised release.  *See* 18 U.S.C. § 3632(d)(4)(A)–(D).  Under 34 U.S.C. § 60541(g), the Attorney General may place eligible elderly offenders on home detention until the expiration of the prison term to which the offender was sentenced.  *See* 34 U.S.C. § 60541(g).

## II. SCREENING

Habeas Rule 4 states that a district court must "promptly examine" each petition and dismiss a petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See Mayle v. Felix*, 545 U.S. 644, 656 (2005); *Hung Viet Vu v. Kirkland*, 363 F. App'x 439, 441–42 (9th Cir. 2010). This rule also applies to a habeas petition brought under 28 U.S.C. § 2241. *See* Habeas Rule 1(b) (providing that district courts may apply the Habeas Rules to habeas petitions that are not brought under 28 U.S.C. § 2254); *Lane v. Feather*, 584 F. App'x 843, 843 (9th Cir. 2014) ("[T]he district court did not err by applying Rule 4 of the Rules Governing Section 2254 Cases to the instant petition [under 28 U.S.C. § 2241].").

## III. DISCUSSION

A.  **Habeas Petitions Under 28 U.S.C. § 2241**

Section 2241 allows a district court to consider an application for a writ of habeas corpus from a prisoner claiming to be "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to

4

§ 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000).

B. **Exhaustion of Administrative Remedies**

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted); *see also Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam) ("Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court.").

Requiring a petitioner to exhaust her administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam).

In general, proper exhaustion requires compliance with an agency's deadlines and other critical procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 88–93 (2006) (addressing exhaustion in the context of administrative law, habeas petitions filed pursuant to 28 U.S.C. § 2254, and the Prison Litigation Reform

5

Act); *see also Kelly v. Dir., Fed. Bureau of Prisons*, 2014 WL 1270530, at *4 (E.D. Cal. Mar. 26, 2014) (applying *Woodford* to a habeas petition brought pursuant to 28 U.S.C. § 2241).

Federal inmates may "seek formal review of an issue relating to any aspect of his/her confinement" through the administrative remedy program. 28 C.F.R. § 542.10(a). The administrative remedy program consists of the following four steps: (1) presenting an issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to a facility's warden, *see* 28 C.F.R. § 542.14(a); (3) appealing to the appropriate Regional Director, *see* 28 C.F.R. § 542.15(a); and (4) appealing to the BOP's General Counsel, *see id.*; *see also Seina v. Fed. Det. Ctr.-Honolulu*, 2016 WL 6775633, at *5 (D. Haw. Nov. 15, 2016) (describing the BOP's four-step administrative remedy procedure).

Courts have discretion to waive the exhaustion requirement in various situations, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks and citation omitted). This discretion, however, "is not unfettered." *Id.* at 998; *see also Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the

'(a)pplication of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion,' it is not lightly to be disregarded.") (citation omitted). A "key consideration" in exercising such discretion is whether "'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme.'" *Laing*, 370 F.3d at 1000 (citation omitted).

District courts may *sua sponte* dismiss a petition filed pursuant to 28 U.S.C. § 2241 for failure to exhaust administrative remedies. *See Kunsman v. Carlson*, 934 F.2d 324 (9th Cir. 1991) (unpublished) (affirming *sua sponte* dismissal of habeas petition); *Warren v. Floyd*, 35 F.3d 573 (9th Cir. 1994) (unpublished) (same); *see also Feldman v. U.S. Parole Comm'n*, 841 F.2d 1129 (9th Cir. 1988) (unpublished) (stating that a district court may *sua sponte* dismiss for failure to exhaust administrative remedies after providing notice to the petitioner and an opportunity to oppose the dismissal).

Here, Untalan admits in the Petition that she has not exhausted her administrative remedies. *See* ECF No. 1 at PageID.1 ("I did not exhaust my administrative remedies."). Thus, the Petition must be dismissed unless the court concludes, as a matter of discretion, that the exhaustion requirement should be waived.

In her Response, Untalan asserts that the exhaustion requirement should be waived because administrative remedies were "unavailable" to her. ECF

No. 6 at PageID.21.  According to Untalan, she attempted to pursue administrative remedies but an unnamed prison official at FDC Honolulu refused to provide her with a grievance form.  *Id.*  In some situations, courts have waived an exhaustion requirement where prison officials failed to provide grievance forms to inmates.  *See Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing decisions in other circuits holding that exhaustion is not required where prison officials refuse to give a prisoner the forms necessary to file an administrative grievance).

The court declines to waive the exhaustion requirement here, however, for several reasons.  First, to the extent Untalan seeks to challenge the duration of her period of incarceration, "[t]he computation of a prisoner's length of confinement is exactly the type of case in which the exhaustion of administrative remedies is appropriate."  *Jones v. Reese*, 1998 WL 827504, at *1 (N.D. Cal. Nov. 24, 1998) (citing *Chua Han Mow v. United States*, 730 F.2d 1308, 1313–14 (9th Cir. 1984)).  Indeed, the BOP is particularly well suited to consider such claims.  *See Hanson v. Hendrix*, 2022 WL 4182535, at *2 (D. Or. Sept. 13, 2022) ("[T]he exhaustion requirement is particularly well-suited to address issues involving eligibility for earned time credits, as BOP has the authority to calculate prison sentences.").  Thus, the BOP is well suited to address Untalan' claims.

Second, Untalan still has ample time to pursue her claims administratively.  According to Untalan, her statutory projected release date is

8

February 17, 2026, and her "elderly offender two thirds date" is February 15, 2025. *See* ECF No. 5-1 at PageID.16.

Any First Step Act time credits earned by Untalan are statutorily limited to twelve months.[3] *See* 18 U.S.C. § 3624(c)(1) ("The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."). Thus, as Respondent explains, even assuming Untalan earns the maximum number of earned time credits, her release date would move up only from February 17, 2026, to February 17, 2025. *See* ECF No. 7 at PageID.32.

To the extent Untalan asserts that her elderly offender release date and earned time credits are cumulative, *see* ECF No. 5 at PageID.14, she is mistaken. An inmate's elderly offender release is calculated separate and apart from any time credits earned by Untalan. *See Salazar-Valenzuela v. Derr*, 2023 WL 2691461, at *3 (D. Haw. Mar. 29, 2023) ("The elderly offense release date is based on an

---

[3] According to Respondent, Untalan has not earned any time credits because she is a "holdover" inmate awaiting designation by the BOP. *See* ECF No. 7 at PageID.31; ECF No. 7-1 at PageID.38; *see also* 28 C.F.R. § 523.42(a) ("An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).").

9

inmate's entire term of imprisonment—not the projected amount of time the prisoner will actually serve with credits.").

Untalan's reliance on the Second Chance Act, ECF No. 5 at PageID.14, is also misplaced. The Second Chance Act states that the BOP must, "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). The Second Chance Act is not an additional source of time "credits." *See Suggs v. Saad*, 2017 WL 1862468, at *5 (N.D.W.Va. May 9, 2017) ("[T]he Second Chance Act does not require that an inmate receive a full twelve months of halfway house placement, only that an inmate be considered for placement up to twelve months to the extent practicable."). Thus, this is not a situation where irreparable injury will result from requiring exhaustion.

Finally, requiring Untalan to exhaust her administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat*, 701 F.2d at 845; *see also Yanagihara v.*

10

*Derr*, 2023 WL 2163685, at *5 (D. Haw. Feb. 22, 2023) (dismissing habeas petition challenging calculation of First Step Act earned time credits because petitioner failed to exhaust administrative remedies).

The best method for Untalan to have her claims considered, therefore, is through the BOP's administrative remedy program. *See Mohammad v. Thompson*, 2022 WL 4484545, at *3 (E.D. Cal. Sept. 27, 2022) ("The BOP should be given the first opportunity to address petitioner's argument that he is entitled to . . . earned time credits."), *report and recommendation adopted*, 2022 WL 17721472 (E.D. Cal. Dec. 15, 2022).

## IV. CONCLUSION

1. The Petition is DISMISSED without prejudice, but without leave to amend, because Untalan failed to exhaust administrative remedies and waiver of the exhaustion requirement is not appropriate in this case. This dismissal does not preclude Untalan from filing a new habeas petition, if necessary, after exhausting her administrative remedies.

2. Upon request by Untalan, Respondent is DIRECTED to ensure that Untalan receives any forms required to exhaust administratively the claims raised in the Petition.

3. The Clerk is DIRECTED to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 10, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Untalan v. Derr*, Civ. No. 23-00091 JMS-RT, Order Dismissing Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241, ECF No. 1